UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SANDRA GARLAND,

      Plaintiff,

v.                                Case No. 18-C-270

MARINE CREDIT UNION,
WORLD FINANCE CORPORATION
OF WISCONSIN, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,

      Defendants.

## DECISION AND ORDER

Plaintiff Sandra Garland filed this action against Marine Credit Union, World Finance Corporation of Wisconsin, Experian Information Solutions Inc., and Trans Union LLC[1] for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Plaintiff claims that credit information furnished on her credit report was incorrect and that Marine and World failed to conduct a reasonable investigation after receiving notice of her dispute over the debts in violation of 15 U.S.C. § 1681s-2(b). Plaintiff also alleges that Experian violated 15 U.S.C. §§ 1681e(b) and 1681i by failing to follow reasonable procedures to ensure that her consumer report was accurate and by failing to conduct a reasonable reinvestigation to determine the accuracy of the disputed information. Because the claims arise under federal law, this court has jurisdiction under 28 U.S.C. § 1331.

---

[1] Plaintiff filed a notice of settlement as to her claims against Trans Union LLC only on May 17, 2018. ECF No. 36.

The case is before the court on Plaintiff's motions for summary judgment as to liability on her claims against Defendants and on Marine's first affirmative defense. For the reasons that follow, I conclude that Plaintiff has failed to establish a "factual inaccuracy" that could have been discovered through investigation, and her claims therefore fail as a matter of law. Accordingly, judgment will be entered in favor of Defendants, Plaintiff's motion on Marine's first affirmative defense will be denied as moot, and the case will be dismissed.

**BACKGROUND**

Sometime prior to 2014, Plaintiff incurred debts for personal, household, and family purposes with Marine Credit Union and World Finance Corporation of Wisconsin. On July 11, 2014, Plaintiff filed an action in Brown County Circuit Court to amortize her debts with Marine and World pursuant to Section 128.21 of the Wisconsin Statutes. *See* Case No. 14CV001010 (Brown Cty., Wis.). After the payments due under the amortization plan proposed by the trustee and approved by the court were completed, the court issued an order stating that each creditor had been paid in full and dismissing the action. The issue before the court concerns the effect of such an order under the FCRA.

Section 128.21 of the Wisconsin Statutes authorizes voluntary proceedings by wage earners for the amortization of their debts as a kind of alternative to bankruptcy. *See* Jeffrey L. Murrell, *Chapter 128: Wisconsin Bankruptcy Alternative*, WISCONSIN LAWYER (May 2008), *available at* https://www.wisbar.org/NewsPublications/WisconsinLawyer/Pages/Article.aspx?ArticleID=1441. Under this section, a debtor can file an action that establishes "a personal receivership wherein, much like in a federal Chapter 13 'wage earners' bankruptcy, a person may amortize problem debts through a deliberate and scheduled repayment plan." *Id.* Upon the filing of a petition under the

statute, the state court stays all executions, attachments, or garnishments. Wis. Stat. § 128.21(1). The court appoints a trustee who then meets with the debtor, compiles a list of creditors with their addresses and the amounts owing to each, and sends out a notice to each informing them of a meeting for the purpose of considering an amortization plan and the claims to be covered by the plan. § 128.21(2). After the meeting is concluded, the trustee reports back to the court either that no plan is feasible or, if she concludes a plan is feasible, recommends to the court "a plan of amortization calculated by weekly or monthly payments, to discharge in full the claims of the creditors listed in the plan within a period of not exceeding 3 years." § 128.21(3). The trustee attaches to the proposed plan the written consents and objections, if any, of the creditors present or represented at the meeting, along with the trustee's analysis and recommendation as to any disputed amounts. § 128.21(3g). The court then enters an order approving the plan and, unless a hearing is requested, determines the amounts of the claims. If a hearing is requested, the court promptly sets a date for a hearing at which it approves the plan if it determines it is feasible and equitable, and determines any disputed claims, modifies the plan, or dismisses the action. § 128.21(3r). If a plan is approved and all claims are paid in full, the trustee informs the court and the action is dismissed. § 128.21(5).

In this case, the court appointed Sandie Miske as trustee to notify Plaintiff's creditors of the proceeding and to submit a plan for amortization. ECF No. 34-1. Plaintiff contends Miske sent notice to Marine and World related to the dollar amount of their claims to be paid in the amortization. Plaintiff completed her amortization of debts in July 2017, and Miske submitted a report of completion with the court, indicating that the claims had been paid in full. ECF No. 30-3. On August 14, 2017, the court entered an order stating that "each creditor had been paid 100% of

3

their claim" and directing the creditors named in the case to "report their claim balance as zero." ECF No. 30-4.

In December 2017, Plaintiff checked her credit report and noticed Experian and TransUnion listed balances due on her credit for Marine and World. Plaintiff sent letters to these consumer reporting agencies regarding the information related to her Marine and World accounts and enclosed a copy of the court's August 14, 2017 order. Experian responded to her letter in February 2017 and indicated it had forwarded her disputes to Marine and World, who decided her debts remained. Defendants contend that Plaintiff understated the actual balance due and owing to them under their respective loan agreements in the amortization plan. As a result, Plaintiff's payments were not sufficient to pay off the amounts owed, including the claim amounts, interest, late fees, and other charges that accrued pursuant to the loan agreements. As a result, Defendants contend, a balance continued to exist after the conclusion of the Chapter 128 proceeding.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the

material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The purpose of the FCRA is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To that end, the FCRA requires Consumer Reporting Agencies (CRAs), such as Experian, to conduct a reasonable investigation when a consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency . . . ." 15 U.S.C. § 1681i(a)(1)(A). Upon receiving notice of such a dispute, the CRA must also promptly notify the furnisher of the disputed information, such as Marine and World in this case, so that the furnisher too can conduct a reasonable investigation to determine the accuracy of the information provided and report back to the CRA the results of the investigation with a view of correcting any errors that occurred. 15 U.S.C. §§ 1681i(a)(2), 1681s–2(b). But the purpose of the investigations undertaken by CRAs and furnishers in response to notice of a dispute is to correct factual inaccuracies, not resolve legal disputes. This is because CRAs and furnishers are neither qualified nor obligated to resolve under the FCRA matters that turn on questions that can only be resolved by a court of law. *Deandrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Chiang v. Verizon New England*, 595 F.3d 26, 38 (1st Cir. 2010).

Plaintiff claims that Defendants violated the FCRA by failing to conduct a reasonable investigation of the disputed Marine and World debts and refusing to correct the inaccurate

5

information contained in her credit report. She contends that the state court's dismissal of her action under Section 128.21 of the Wisconsin Statutes upon a finding that each creditor had been paid "100% of their claim" conclusively establishes that the information concerning debts owed to Marine and World, and included in her credit report by Experian, was as a factual matter inaccurate. Defendants' failure to correct the information concerning those debts in the face of the state court's order, she contends, violates several provisions of the FCRA.

Defendants, on the other hand, maintain that Plaintiff did not report the full amount of the debt she owed in the Chapter 128 plan and that Wis. Stat. § 128.21 proceedings do not and cannot discharge any unpaid obligation that was not included in and paid under the plan. Because the question of what impact a Chapter 128 plan has on Plaintiff's contractual obligations is a legal question, Defendants assert that Plaintiff's claims fail because the inaccuracy she asserts could not be resolved through a reasonable investigation as required by the FCRA. This is because, as noted above, to prevail on a claim against a furnisher or a CRA, the consumer has the burden to prove a "factual inaccuracy, rather than the existence of disputed legal questions." *Chiang*, 595 F.3d at 38; *see also Brill v. Trans Union LLC*, No. 15-cv-300-slc, 2015 WL 9095103, at *3 (W.D. Wis. Dec. 16, 2015) ("[F]ederal courts consistently hold that the FCRA does not impose a duty on credit reporting agencies to verify the validity of the underlying debt when conducting reinvestigations." (citing cases)).

As an initial matter, Plaintiff argues that Defendants' argument is barred by the *Rooker-Feldman* doctrine since the state court has determined that she paid 100% of the creditors' claims and directed them to report their claim balances as zero. Given the order of the state court, Plaintiff

argues that there is no longer any legal issue to resolve and the assertion that she still owes money to Marine and World is factually incorrect.

The *Rooker-Feldman* doctrine precludes a federal district court from exercising jurisdiction to review final state-court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). It bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Feldman*, 544 U.S. at 284. The *Rooker-Feldman* doctrine does not bar the arguments Defendants raise in this case, however, as the doctrine "is not an offensive tool to be used against a party defending itself against claims brought in federal court." *Griswold v. Zeddun*, No. 14-cv-718, 2015 WL 13022896, at *4 (W.D. Wis. Sept. 15, 2015) (citing *Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 702 (7th Cir. 1998) (federal courts applying the doctrine consider "whether the injury alleged by the federal *plaintiff* resulted from the state court judgment itself or is distinct from that judgment")).

Here, Defendants are not challenging the state court's order in the Chapter 128 proceeding; instead, Defendants argue that the state court order does not resolve the question here. In their view, the state court order only says that the claims included in the amortization plan approved by the court were paid in full, not any portion of the debts not included in the plan or which accrued after the plan was approved. Marine and World contend that Plaintiff failed to list the full amount of the debts she owed them in her plan and that the plan did not cover interest and late charges Plaintiff agreed to pay under the terms of the loan agreements she signed with them. Thus, they

contend, even after she completed the payments due under the plan, those amounts remained due and owing.

Defendants' argument is not without merit. Section 128.21 is a unique legislative provision that was enacted in the 1930s. It provides protection from legal collection procedures to a wage earner who files a petition which states the debtor is unable to pay current debts as they mature, but is able to pay them if they were amortized over the three-year period. The protection afforded by the statute, however, only applies to claims that arose prior to the proceeding and that are included in the amortization plan. Wis. Stat. § 128.21(2). The statute says nothing about interest or late charges that the creditor is entitled to assess under the loan agreement. As Defendants note, a state law cannot alter a valid contract without running afoul of the contracts clause of the United States Constitution, which prohibits the states from enacting laws that impair the obligations of contracts. U.S. Const. Article I, section 10, clause 1. This limitation seems to be reflected in subsection (7) of the statute which states in part that "[n]either the determination of the amount of any claim for the purposes of the plan, nor the acceptance of payments under the plan, shall affect the right of any creditor to litigate the creditor's claim and obtain a judgment on the claim, or the right of the debtor to dispute the claim." § 128.21(7). And unlike a bankruptcy proceeding, a Section 128.21 proceeding cannot result in a discharge of the borrower's debt. The power to establish laws governing bankruptcy is one of Congress' enumerated powers under the Constitution. U.S. Const., Article I, section 8, clause 4. No such power is delegated to the states.

On the other hand, there are also arguments in support of Plaintiff's position. The value of amortizing one's debts is significantly reduced if the creditors are not bound by the determination made by the court as to the amount of the debt they are to be paid, and interest and late charges

continue to accrue even while payments are made. While state law may not impair the obligations of contracts, parties can agree to modifications. In this case, the notice to creditors specifically stated that "no additional interest will be accrued to the balances during the repayment of the plan." ECF No. 34-2. The notice also warned that "if you do not respond to the meeting of creditors, it will be assumed that you agree with the claim as listed above." *Id.* Although the record does not reflect that World received such a notice, Marine returned the claim form acknowledging that "the claim amount listed above is correct." ECF No. 34-2. And the amortization plan was approved by the state court apparently without objection. Still, the statute tells creditors that neither the court's determination of the amount of any claim, nor the acceptance of payments under the plan, affects the right of any creditor to litigate and obtain a judgment on the claim. Wis. Stat. § 128.21(7); *see also Banks v. The Target Corp.*, 12-cv-731-bbc, 2013 WL 12233929 (W.D. Wis. May 21, 2017) (noting that the fact that plaintiff was making payments required by § 128.21 repayment plan did not make listing account "past due" inaccurate).

Taking all these matters into consideration, I conclude that the dispute in this case is not over a factual inaccuracy in Defendants' reporting but rather a legal dispute regarding the impact the Chapter 128 proceeding had on Garland's debt overall. In particular, the issue here is whether the completion of a § 128.21 plan constitutes a discharge of the entire debt between the debtor and creditor, including the discharge of interest or fees that accrue in accordance with an agreement between the parties or other debt not included in the plan. As a result, unless and until a proper tribunal concludes the Chapter 128 proceeding eliminated the debts in their entirety or that the plan precludes the accrual of post-filing interest and other penalties, Plaintiff cannot establish that the reported information is factually inaccurate. Accordingly, her claims fail as a matter of law.

9

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for partial summary judgment (ECF No. 28) is **DENIED**, and judgment will be entered in favor of Defendants. Plaintiff's motion for summary judgment as to Marine Credit Union's First Affirmative Defense (ECF No. 32) is **DENIED as moot**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   26th   day of October, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
